All rise. Hear ye, hear ye. The Bankruptcy Appellate Panel for the Sixth Circuit is now in session. All persons having business before this Honorable Court, draw near, give attention, and ye shall be heard. God save the United States and this Honorable Court. Please be seated. Case number 13-8015. Ted Dukas, et al. Appellants vs. George A. Bavelis, athlete. Argument not to be seen. Fifteen minutes per side. Mr. Sorina, you may proceed for the atonement. Good afternoon, Counsel. Can we have your appearance, please? Yes, Your Honor. Juan Zurillo with Holland and Knight on behalf of the co-appellants, Ted Dukas and Sokal. Substituted for quick capital. Thank you. And before you get started, would you like to save some time for rebuttal? Yes. Five minutes. You may proceed. Okay. The fundamental question here is, what was this trial about, this adversary? And it is our contention that this adversary was limited to considering the proofs of claims filed by quick capital. And we reached that decision because the court, prior to the trial, at the request of the plaintiff and the adversary, George Bavelis, bifurcated count three from the rest of the 15-count complaint. Now, our concern is that the bankruptcy court went beyond count three and appears to have preempted any further claim that Ted Dukas and or his companies may have against George Bavelis or his estate. Why did that not happen? Well, the contention here was that a promissory note was executed and that that promissory note was supported by consideration, a promissory note in favor of quick capital. Now, the bankruptcy court determined ultimately that the consideration that was promised for that note never came to be. We take issue with that, but we understand those are factual findings, so it's a tall order. However, we believe that there was ample evidence elicited from Sterling Bank's own chief officers of Moyle Fritz and of Mr. Albright, president and chief financial officer, which acknowledged that Mr. Dukas and or his companies did provide consideration. It's detailed. I can quickly go over it. But there was some consideration given. Mr. Dukas' quick capital also took the position that the $1.6 million to $2 million that were taken out of his account at Sterling were loans to Mr. Bavelis. The court rejected that. The court ultimately found that it was really a stock purchase and that he really was buying Sterling Bank stock. We have issues with that determination based on many facts, including the fact that stock certificates were not issued to Mr. Dukas or any of his companies. Those came much way after the fact, after their falling out, as well as that if it had been a stock sale, it would have violated the bank's policy and FDIC regulations that would have required the signing of the subscription agreement to the private placement memorandum. Having said that, the court rejected those arguments and now said it's a stock purchase. The parties that actually funded the $2 million, which are various Dukas entities, those parties, as of the date of the memorandum decision, were unaware that the court would ultimately make a determination that this is not a loan, that this was a stock sale. Issues were raised regarding the propriety. If that was a stock sale, whether that stock sale complied with Florida Statute Section 517. So it's something that could not have been anticipated. I guess a preemptive claim of sorts or an alternate claim could have been made. But it's really as of the date that the memorandum decision is issued that these parties, who are now in our contention claimants or could be claimants, would be claimants of the Bovalis estate, would be entitled to file a claim, should be entitled to file a claim, based upon the court's determination that this was not a loan and therefore there was not consideration given for the $14 million promissory note. Didn't the proposed findings affect conclusions of law at the conclusion of the trial? The proposed findings affected conclusions of law that were submitted by Quick Capital. Ask the judge to make a finding that the right of rescission had not been proper, thereby bringing the issue up. Because Judge Hoffman didn't try that issue. But it was in the proposed findings affecting conclusions of law. I think they were submitted by your client. Wasn't he required at that point to do something since that was a finding that was specifically asked for by Quick Capital? That submission was really... Quick Capital's counsel got the impression that the judge was not viewing the consideration as a loan, but rather as a stock purchase. Obviously, he did not know what the judge was ultimately going to determine. But he saw the judge looking more at that consideration as a stock purchase. Remember, this was a stock purchase in a bank that was about to be taken over. This was worthless stock that was being purchased. The evidence was very clear. The only people that subscribed to this private placement memorandum was Mr. Bobelus and Mr. Dukas. He was buying non-voting, worthless stock. But the judge said it's not a loan. So if it's not a loan, then what Quick Capital's counsel wanted to bring to the court's attention, well, then there's some value here because he was, in a way, by purchasing stock, capitalizing the bank, which is what the bank needed in order to avoid the eventual shutdown. So it's really raised in that vein, but not raised so that the court will then make a determination that the rescission claim was untimely, and then a further determination that these were exempt securities. That's another determination. There's two potential claims here. The rescission claim was timely brought, and this was not an exempt security transaction because these were unregistered shares, and they had to comply with five conditions under Florida law, 12 of which were not complied with. So that's the fundamental problem. Can that finding now be taken to a point where it's a full adjudication of any potential claim that Mr. Dukas or any of his companies could assert against the estate of Mr. Bobelus with respect to the morphed claim from loan to security sale that this was a stock purchase? Is there a bar date in place? Would this be a new issue? There is a bar date, but as your honors know, late-filed claims, there are procedures to file late-filed claims, and the courts will look at several factors to determine whether to consider late-filed claims, which falls within the prerogative of a bankruptcy court. For example, prejudice to creditor. Well, notice. Was there notice? Did Mr. Bobelus know of this? Would there be prejudice to creditors? We just don't feel it should be preempted based on what was tried, and perhaps maybe even based on an ill-advised proposed finding of fact, but I don't believe that an ill-advised proposed finding of fact should then be broadened to be a complete adjudication on any potential claim. The other issue is we have a problem with the... There was consideration. There was some consideration. It's undisputed that it wasn't a total want of consideration, yet there's absolutely no consideration. Does that mean that Mr. Dukas, if he gave any value, should he be precluded from filing any kind of claim? What about a claim for unjust enrichment? What about valuing the claim based upon what was actually given? What, in your view, actually was given? This was a $14 million note. There was never any cash, right? No, there was a $250,000 check that was provided by Nemesis, and then the court found that that money was returned in some other kind of transaction. But beyond that, Blair International, one of Dukas' companies, assumed a mortgage loan from a troubled real estate developer by the name of Glenn Wright and made that a performing loan, a $3.6 million loan to help out the bank. That was a significant loan on the bank's books. He did that. He pledged. He had five lots that were original collateral for the loan. He provided those in escrow to Sterling Bank. Mr. Albright, the bank's president, was party to that escrow agreement, so it's difficult to conceive that Mr. Bivalas, chairman of the board, did not know of that transaction. Mr. Dukas transferred $2 million to Sterling Bank. That's also undisputed. Remember, that was a troubled institution. Shortly thereafter, approximately— Didn't he promise, though, that he would purchase the bank in the name of the debtor here, and instead he actually purchased stock in his own name? Yes, yes. There was stock that— He questioned the— The money went into his account, and the stock was purchased in his name, although the stock certificates were not issued until much later. And his contention was that this was part of— He could not disclose, because the agreement was confidential, he could not disclose to the bank that, in reality, he was really purchasing— capitalizing the bank. This stock was worthless. He was really providing money to the bank for regulatory purposes. This was non-voting stock, and the bank was, under heightened regulatory scrutiny, they were about to be closed down. He did not buy the stock to enrich himself. He bought the stock to help out the bank, which is where Bivalas had most of his assets. Thank you, counsel. Thank you. May it please the court, Marion Little for the appellee. This is a complex case. There were numerous issues presented to the trial court. Numerous transactions were involved. There were numerous entities whose names are littered throughout the court's decision. But at the bottom line, this was no more complex than a standard red light, green light traffic accident case. Because whether the light was red or whether it's green is determined by the credibility of the witnesses. And all parties agreed. You can look through the proposed findings of the facts submitted by Mr. Dukas' counsel below, and you'll see that all parties— plaintiff, defendant, and the court— that the determining factor in this case would be who was telling the truth. And in the course of a 115-page decision, Judge Hoffman found that Mr. Bivalas was telling the truth and Mr. Dukas was not. We know that when a determination is made by the trial court judge based upon credibility, it is virtually impossible to challenge those findings on appeal. And I would suggest to you that is conclusive the allegations that there was a failure of consideration or that there was payment or there was a fraudulent inducement. Because you'll remember, each of those theories I've just articulated for you were each of these separate independent bases found by Judge Hoffman to set aside the quick capital claim. Mr. Little, can you respond to the proposed counsel's argument about Judge Hoffman going beyond the scope of the agreed order and deciding something beyond the claim itself? Certainly. Part of the arguments made below were that the judge went beyond simply deciding the quick capital issue as a result of considering the other fraud committed by Ted Dukas. And we know that under Evidence Rule 404B, evidence of similar and related misconduct is in fact relevant to the proceedings. And so Judge Hoffman proceeded to consider that evidence. He also proceeded to consider the argument that you're hearing today, which is that Mr. Dukas had a securities claim. The reason that he elected to consider that issue is he was specifically invited by Mr. Dukas' counsel at the trial court level to consider that. At page 22 of the proposed findings of fact and conclusions of law, quick capital's counsel specifically requests the court to make findings as to whether or not there had been a violation of the Florida statute with respect to exemption and to then provide rescission based upon that and just make sure we're clear as to what specifically was asked. The claim that was advanced at the trial court level was that this was a non-exempt transaction and thus under the Florida Blue Sky statute there should be rescission. The claim that has now been presented to you has been expanded once again. But we know that as a basic proposition of law that when a litigant invites the court to consider it, that litigant is then foreclosed on appeal from complaining that the trial court proceeded to consider that issue. And that is exactly what happened here because Mr. Dukas changed his mind. Mr. Dukas changed his mind during the course of the trial. He had not filed a proof of claim relating to the claim that he is identifying for you today. The bar date, by the way, was November 24, 2010. So now we're three years after the fact. There has been no effort by any of the so-called Dukas entities to file a proof of claim. There has been no effort by any of the associated defendants in the adversary proceeding to file an amended pleading to say we have a claim. They slept on their rights. They made an affirmative decision not to pursue the claim. Instead, they tried to play out the theory that was advanced initially to the trial court that supposedly this money was offered for the benefit of Mr. Bevelis. That turned out to be false. And when it became apparent during the course of a very contentious and long trial that Mr. Dukas was going to be foreclosed from proceeding on the quick capital note, then, not during the course of the trial, by the way, because when you look at the evidence, you'll see there's very little testimony whatsoever by Mr. Dukas on this particular issue. There's no testimony, for example, about materiality or reliance. None of those type of elements on a fraud claim or security fraud claim are evident in the record. Rather, only as part of the post-trial briefings, they said, Judge, Judge Hoffman, go ahead and consider this issue. So Judge Hoffman proceeded to consider it, and he did appropriately based upon the record that was presented to him because even though they were not expressing it explicitly, what they were trying to do during the course of the trial, with the benefit of hindsight and now 20-20 vision looking at it, we see that they were trying to develop this theory as an alternative argument during the course of the trial. That's why they elected to present it as part of the proposed findings, fact, and conclusions law. Their disappointment, of course, is that Judge Hoffman found against them. And as we've set forth in our appellate brief, he did so for appropriate reasons, not the least of which were dealing with an exemption provision of the Florida Blue Sky Statute that is akin to Reg D. The only difference from Reg D at the federal level and the Florida Blue Sky Statute 517.611 is that it has a rescission, express rescission. And that rescission right simply says that you're entitled to rescind it at the later of three days from the payment of the consideration or three days from the communication that you have the rescission right. What Judge Hoffman found is that Mr. Dukas, contrary to suggestions during the course of the trial, had in fact received the private placement memorandum. The private placement memorandum spelled out that that rescission right was available and thus communication for purposes of the Blue Sky Statute had been satisfied. The other item that the court found that was significant is that Mr. Dukas in fact had not sought rescission in a timely fashion. That is not within three days of the payment of consideration, it was actually four months later, and not within three days of the delivery of the private placement memorandum. Now those are factual findings that were made. And much like the other factual findings in this case, I would suggest that absent some extraordinary story that we have not seen in our papers, that this court's review of that is, again, limited. So we believe under all those theories there was no type of Blue Sky Statute. Now they stand before this court and say, well, we may have a host of other claims. Shame on Judge Hoffman for foreclosing this. Well, Judge Hoffman can only consider what was presented to him. What was presented to him was at the time this adversary proceeding was tried, even on a bifurcated basis, there had in fact been no proof of claims filed by Mr. Dukas or any of his entities save for Quick Capital. That was it. There had been no effort to amend any pleadings to add any additional claims. There was no counterclaim filed by any of those adversary defendants in that proceeding. So he considered what was presented to them, which is whether or not the Quick Capital claim was valid. He said no. And then when Mr. Dukas tried to change his story and say, wait a second, I have an alternative argument I'd like you to consider, Judge, the judge did him the favor and considered that argument. He did so properly because, again, he was invited to do so. And he's entitled to resolve that matter as part of the conclusion of these proceedings. Was he invited to do so only as a sort of issue? Under the invited era doctrine, was he, you know, Mr. Zarrella seemed to say that, okay, you know, he got into the Smith's bargain, well, he did, but he still has some other claims, actually, and no proof of claims. That's correct. Now some three years after the bargain, there's been no other claims filed. In a normal case, I assume what would happen is there would be a proof of claim filed, and then, yes, there's all kinds of defenses, and there's an issue of preclusion, et cetera. But do you not find it a little unusual in a case, even if the judge is invited to decide certain issues, that the judge says you have no proof of claim? Is that what's happening here? I think what the court concluded is not that you don't have a proof of claim, but rather that Ted Dukas and his various entities do not have a claim, acknowledging... Which is you don't really have a right to file a proof of claim. Right. I agree with you, Your Honor, in that regard. The other thing that you would perhaps appreciate is that since there is a stipulation filed with the bankruptcy court indicating that but for the issues presented in this appeal, the Dukas defendants or Dukas group, whatever they may be, does not have any other claims. So the claims they had are the ones that were presented here. Nothing else. That has been stipulated. We went through the process at the court's direction of making sure we, on a curative basis, we secured the 54B language. And I would invite you to look at that stipulation because, one, it substitutes SoCal as the new party defendant for Quick Capital, but it also contains that language that I've just indicated to you regarding there being no other claims but for those that are now presented to this appellate court. So it sort of falls in the category they had their opportunity, they had their chance. It was incumbent upon them to present them. It was incumbent upon them to present them at least in their appellate brief. But when you look at their appellate brief, the only thing they're talking about is not some unjust enrichment claim, not some other factual scenario. The only thing they're talking about in their appellate brief, which frames the issues for this court's consideration today, is the findings made by Judge Hoffman as to Quick Capital issues and, second, the findings made by Judge Hoffman as to what he was specifically invited to consider. That is the only thing framed by the paper. So it's always an interesting academic approach to stand before the court and say, well, theoretically, we have some other issues. The question is, what did you perfect for purposes of the appeal? What did you elect to bring to the court's attention? And in that regard, the record is clear. We only have what the court was asked to specifically consider. And thus for them to now stand before this panel and suggest that Judge Hoffman erred in some respect, I would suggest is disingenuous. For Ted Dukas and the Dukas... The Quick Capital, the Ted Dukas entities, would capture the universe. It says, what's before this court is all there is. Nothing else. And what we know is before this court is only Quick Capital promissory note and the security issue. That's it. Everything else is gone pursuant to that stipulation. And so we would ask you to... It takes a while to go through Judge Hoffman's 115-page decision and consider his findings, but I would submit to you that there is no error in the decision-making process that was undertaken by him He reached the correct decision, and there is no basis at this point in time for challenging his decision either with respect to Quick Capital or the security issue. Again, the only issues before the court today. Thank you. Thank you. There are procedures to consider late-filed claims. The Bankruptcy Code allows for them. We, Mr. Dukas and his entities, should have the right to pursue the claims that they believe they have based upon the court's ruling rejecting the contention that the $2 million was a loan to Mr. Pavelis. Why, if they were so certain that those were claims that they held, why didn't they file them earlier? When counsels proposed, it was only when they discovered that the potential claim based on the Quick Capital note was going down that, mid-trial, Mr. Dukas shifted his idea about how he was going to get some payment out of this estate. So, if he was so certain he had a claim based on the securities issue, why didn't he file it earlier? He steadfastly maintained to the end and still maintains that this was a loan. The purchase of stock makes no sense. You're buying stock into a bank that's going down the tubes. But if it was a loan, he had a claim. He was not repaid in a loan that gave him a claim. My question is, if he was so certain it was a loan, why didn't he file a claim earlier based on the unpaid loan? Well, initially, the original proof of claim was based on an unpaid loan and then he amended it to make it the $14 million promissory note. His original claim was... It wasn't in his name, though, was it? The original claim, I don't believe, was brought by him. It was a claim filed by Quick Capital. That's right. No, no. Quick Capital. That's right. Mr. Dukas never alleged any theory, originally, in this case, that he had individualized some claim against the estate. Isn't that true? That is true. Absolutely true. Because Mr. Dukas always maintained that his company, Quick Capital, had a claim for $14 million based upon the promissory note. That was rejected. And the reason Mr. Dukas' attorney, Quick Capital's attorney, presented as an alternate finding the issue of the stock sale, that if it was a stock sale, it violated Florida law, was also to highlight the fact that this was not a stock sale. Because it would have violated Florida law. This was really a loan. To heighten that argument. I believe it was an ill-conceived statement. I don't think it was the right thing to do because it created this argument. However, because it was an ill-conceived attempt to focus the judge on the loan versus the stock sale, by saying this stock sale violated Florida law, doesn't automatically make this a trial on theoretical count for saying Mr. Dukas and or his companies have no further claims here. None whatsoever. To preclude it forever and ever. I don't believe it goes that far. And it should not go that far. Well, Mr. Zarelli, you seem to be, to me, arguing that, okay, I didn't know that I had a claim until the judge sort of ruled this way. Now I realize that maybe I have a claim. Well, how do you get around that being a tardy claim? How do you get around that last claim? Is that the argument?  But now, when the judge ruled, I did. If Mr. Bevelis, if I were to argue this in front of Judge Hoffman tomorrow on an objection to a late filed claim, I would argue the following. Bevelis took the position during the trial that this was a, he was just buying stock in my company, in my bank. So he knew. As far as his state of mind was concerned, he knew, or he took the position, this was a stock sale. So the notice to the debtor had noticed that this was a stock sale. If the stock sale violated Florida law and there's remedies under Florida law, then the consequences under the law are imputed to Mr. Bevelis and his estate. Three, then you look at creditors. Is this 100% distribution to creditors? If it's 100% distribution to creditors, is there any prejudice to the creditor body for a late filed claim? Those are considerations that a bankruptcy court takes in determining whether a late filed claim should be allowed or not. And those are all viable considerations still. Just so that this panel knows, the debtor is nowhere close to finalizing his reorganization. They've just filed the third plan of reorganization with disclosure statement. There's still a pending unresolved claim of $30 million in favor of the FDIC. I would argue that a good position can be made to the bankruptcy court that no prejudice, no prejudice and no delay to the administration of the estate would flow from a late filed claim in this case. All we want to have is the ability to present the claim and then deal with it. Thank you. Thank you, counsel. All rise. This court will take a brief recess and the proceedings will resume shortly. Thank you.